# Meadors *v.* Askew.

*Bill in Equity to set aside Sale of Lands by Executor.*

1. *Variance.*—Under a bill to set aside a sale of lands by an executor, if the complainants claim as heirs at law, they can not recover on proof of title in them as devisees; and if the bill alleges that the sale was made under an order of the Probate Court, while the proof shows that it was in fact made under authority conferred by the will, and that an order of sale was procured from the court only for the purpose of supplying a supposed defect in that power, the variance is fatal to relief.

APPEAL from the Chancery Court of Chambers.
Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 16th June, 1873, by Charlotte Meadors and others, as heirs at law of Warner W. Meadors, deceased, against William S. Askew and John C. Meadors; and sought to vacate and set aside a sale of certain lands, which had belonged to said Warner W. Meadors, and which had been sold by said John C. Meadors, as his executor, to said William S. Askew. Said Warner W. Meadors died in said county of Chambers, where he resided, in October, 1862; and his last will and testament was there duly admitted to probate soon after his death. The will contained the following (with other) provisions:

"3. I desire, after my just debts are paid, that the remainder of my property, both personal and real, shall be kept together by my executor or executors, except such portions as shall be given to my children which are now under age, when they become of age or marry, as hereinafter specified, during the life or widowhood of my beloved wife, Nancy Meadors, or until the youngest child becomes of age or marries. But, when my wife dies, or marries, or when my youngest child becomes of age or marries, then, or in either of those cases, I desire that my property shall all be

[Meadors v. Askew.]

sold, and the proceeds divided between my said wife and children, which will be hereinafter named." The fourth clause provided for the education of his children; the fifth declared his intention that his children should share equally in his estate, and the sixth and seventh clauses were in these words :

" 6. I desire that my estate shall be kept together by my executor or executors, and disposed of by my executor or executors as the wants or necessities of my said wife and children may require, during the life of my said wife, or her widowhood, or until my youngest child becomes of age or marries. But, when my said wife dies, or marries, or my youngest child becomes of age or marries, then, or in either case, I desire my executors to sell my real and personal property, and divide the proceeds equally between my wife and children; my wife to receive a full child's part in every respect. Provided, that if my said wife prefers it, my said executor or executors shall reserve and hold one third or one-half, as my said wife may prefer, of my entire estate, both personal and real, for her use and support during her life or widowhood; but, at her death or marriage, they shall divide it equally among my said children.

" 7. I desire that, if there should be a surplus left in the hands of my executors, arising from the proceeds of my estate, then, in that case, I desire that my executor or executors lay it out for property, and add it to said estate; or, if it should become necessary for any of the personal or real estate to be disposed of, for the benefit of my estate, then, or in either case, I do hereby desire and authorize my executor or executors to buy or sell, as they may think best, without having to apply to the Probate Court for an order to do either."

By the eighth and last clause of the will, the testator appointed James J. Meadors and Andrew J. Blakely, as his executors; but he afterwards added a codicil, which contained this provision: "In addition to James J. Meadors, I hereby appoint William S. Askew and John C. Meadors, as my legal executors, and do hereby invest them with full power to execute the above, my last will and testament, and the codicil thereto; and I desire that my executors to this testament, viz., James J. Meadors, William S. Askew, and John C. Meadors, shall not be compelled to give bond and security to any power or court, but have full authority to execute this testament without restraint." John C. Meadors alone qualified as executor. William S. Askew was a son-in-law of the testator.

The bill alleged the death of said W. W. Meadors, the ex-

ecution and probate of his will, and the grant of letters testamentary to said John C. Meadors; but a copy of the will was not made an exhibit to the bill, nor was anything said as to its provisions. It alleged, also, that said John C. Meadors, as executor, filed his petition in the Probate Court of said county, on the 21st September, 1866, asking an order to sell the lands, on the ground that they could not be equitably divided without a sale; that the court granted an order of sale as prayed, and that the executor sold the lands under this order, but not in accordance with its terms. It charged fraud in the sale, and collusion between the executor and the purchaser, said W. S. Askew, and specified numerous defects and irregularities in the proceedings: that the order required the sale to be made for cash, but no money was ever paid to the executor by said Askew; that the sale was in fact made and consummated privately, and without any advertisement, while the order required it to be made publicly, and after advertisement for three weeks; that the infant complainants were not properly brought before the court on the hearing of the petition; that depositions were not taken as in chancery cases, &c. Copies of the petition, the order of sale, and the depositions, were made exhibits to the bill. The petition was filed on the 26th September, 1866, and was verified by the oath of the executor; alleged that the lands could not be equitably divided without a sale, and that "the interests of all concerned in said lands will, as petitioner believes, be best promoted by a sale thereof, and a distribution of the proceeds among said heirs according to their several rights;" and prayed a sale of the lands, "for cash, for the purpose of making an equitable division of said estate among said heirs, according to the statute in such cases made." The order of sale, which was granted on the 6th November, 1866, recites that a guardian *ad litem* had been appointed to represent the infants; that he had accepted the appointment in writing, and had filed an answer denying the allegations of the petition; that all the parties in interest were present, or represented; that it was proved to the satisfaction of the court, by the depositions of two disinterested witnesses, taken as in chancery cases, that the lands could not be equitably divided without a sale; and authorizes the executor to sell the lands, "at public outcry, for cash, in manner and form as the law directs in such cases, after having first given notice, for at least three successive weeks, of the time, place, and terms of sale."

The defendants filed separate answers, which were, however, substantially the same. They alleged, that the executor sold the lands to Askew, not under the order of sale

granted by the Probate Court, but under authority conferred on him by the testator's will, a copy of which was made an exhibit to the answer; that the order of sale was afterwards obtained from the court, under legal advice, because some doubts had arisen as to the authority conferred by the will; that Askew paid full value for the lands, partly in cotton, and partly in a note which he held against the estate of said W. W. Meadors, and which had been given for the purchase-money of a part of the land when bought by said W. W. Meadors. They demurred to the bill, for want of equity; and because the complainants, as heirs at law, had an adequate and complete legal remedy; and because they could not recover as heirs, when their bill showed that the testator had left a will. The defendant Askew afterwards filed "an amended and supplemental answer," in which he set up a deed for the lands, executed to him by said John C. Meadors, as executor, after the commencement of this suit.

At the March term, 1874, the cause having been submitted on a motion to dismiss the bill for want of equity, as well as on pleadings and proof, the chancellor (Hon. B. B. Mc-Craw) held that the bill, though defective, was not wanting in equity; and he therefore set aside the submission, reinstated the cause on the docket, and gave the complainant leave to amend his bill by asking that the administration of said W. W. Meadors' estate might be transferred into said court and there finally settled, or otherwise as he might be advised. The bill was afterwards amended, by asking the transfer and final settlement of said estate, but not in any other particular.

It was admitted that Mrs. Nancy Meadors, the testator's widow, died in 1863, before the sale of the land. The depositions of said defendants were taken in their own behalf, and each of them testified to the facts stated in their answers as to the sale of the land. Askew admitted, in answer to cross interrogatories, that the executor delivered a deed for the lands, which recited that they were sold under the order of the Probate Court; and that he held possession of the lands under this deed, which was dated the 14th December, 1866, until the execution of the second deed by the executor after the commencement of the suit. Both of these deeds were produced, and proved. The first recited that the executor had sold the land under the order of the Probate Court; that said Askew had become the purchaser, at the price of $2,800, for cash, and had paid the purchase-money; that the court had directed the executor to make title to the purchaser; and that he therefore conveyed to the said Askew, "in pursuance of said order, and for and in consideration of

said purchase-money having been paid." The second deed, after reciting the appointment and qualification of the executor, and the sale of the lands by him "under the power and authority conferred by the said will," proceeded as follows : "And whereas, there was, in addition, an order of the said Probate Court, ordering the said lands to be sold ; and whereas, said order was granted on probate of said will during the rebellion of the State of Alabama ; and whereas, I, said John C. Meadors, since the termination of said rebellion, have had the same re-probated on the record of the former probate, and letters testamentary have been again issued to me by said Probate Court of Chambers : Now, in consideration of the premises, and under the power and authority contained in the said will, and pursuant thereto, and in virtue of said power and authority, as shown and contained in the sixth and seventh items of said will, do hereby bargain, sell, and convey, and do by these presents hereby ratify, confirm, and make good the said sale unto the said W. S. Askew, to the above described lands ; to have and to hold," &c.

On a second hearing, on pleadings and proof, the chancellor dismissed the bill, but without stating on what ground his decree was based; and his decree is now assigned as error.

WM. H. DENSON, for appellants.

WM. H. BARNES, contra.

BRICKELL, C. J.—The object of the bill is to vacate a sale of lands averred to have been made by an executor under an order of the Court of Probate. In any aspect in which the case can be considered, whatever may be its merits, there are insuperable obstacles to a decree favorable to the appellants, which doubtless compelled the dismissal of the bill. A bill in equity must, of necessity, state with accuracy the right and title of the plaintiffs, and the grievance for which redress is sought.—Story's Eq. Pl. § 241. One title or right—for instance, that of heirs, cannot be stated in the bill, and a recovery had on proof of a title as devisees.— McKinley v. Irvine, 13 Ala. 698. It is in the capacity of heirs that the appellants claimed title to the lands sold, and it is their right as heirs only which they aver had been injuriously affected. The sale of which complaint is made, was not made under an order of the Court of Probate, as averred in the bill, but was made by the executor, claiming to exercise a power conferred by the will of the testator. It seems to

have been erroneously supposed, by the executor and the purchaser, that an order of sale from the Court of Probate would cure the want of power, if there was such want, to make a private sale of the lands, and for that reason it was obtained; but it was not acted on, and, in the conveyance to the purchaser, is simply referred to, as an authority in addition to that derived from the will.

It is apparent that the appellants, not being entitled as heirs, cannot maintain the bill on the title of devisees. It is equally apparent that, claiming to vacate a sale made under a decree of the Court of Probate, they cannot ask the vacation of a sale not made under such decree, but in exercise of a power supposed to be conferred by the will. If the will does not confer the power, the sale is a nullity, and equity will not interfere to set it aside.—*Posey v. Conway*, 10 Ala. 811. If the will confers the power, but there has been fraud, or collusion between the executor and purchaser, the court would interfere, and vacate it. No inquiry would arise, as to the regularity or validity of any proceeding under the decree of the Court of Probate; nor, whether the jurisdiction resided in that court to set aside the sale, or in the Court of Chancery.

These discrepancies between the averments of the bill and the facts as shown in the evidence, were called to the attention of the appellants, in the Court of Chancery; but no effort was made to remove and cure them, by an amendment conforming the pleadings to the evidence. They compelled a dismissal of the bill, and the appellants must abide the result of pleading a case the evidence does not support.

Let the decree be affirmed.